M. Marvin Berger, J.
The defendant was found guilty of the charge of endangering the welfare of a child, in violation of section 260.10 of the Penal Law, a misdemeanor, after 3 days of testimony in a nonjury trial before me.
He had originally been accused of the felony of rape in the first degree (Penal Law, § 130.35). Following a preliminary hearing before another Judge at which the 14-year-old complainant and a gynecologist testified, the court dismissed the rape charge but directed that the defendant be tried on the remaining charges.
At the earlier hearing and on the first day of trial, the complainant, Bernadine-, (whose last name is omitted to safeguard her identity) testified that she was a neighbor of the defendant and that at 3 o’clock on a weekday afternoon in August, 1971, the defendant asked her to deliver some phonograph records to his daughter-in-law. After she entered defendant’s apartment to get the records, she was seized by defendant, thrown to a couch, held down by defendant and raped.
Dr. Josephine English, a gynecologist, testified that she examined the complainant on October 29, 1971 and found her to be 12 weeks pregnant, fixing the date of conception as within a day or two of the date of the incident.
There was no further support of the complainant’s testimony except that her father testified that at about the time of the happening, Bernadine refused food and stayed in her room. Her mother, who was in Alabama attending a funeral during the period in which the rape took place, swore that Bernadine cried when she spoke to her on the telephone from Birmingham. When she returned from Alabama, four days after the rape, she said that Bernadine refused food, remained in her room, wept and no longer visited friends in the apartment building. Bernadine lost weight but refused to visit a male doctor, although she had been treated by male doctors before August 19. Finally, on October 29, after Dr. English examined Bernadine and discovered her pregnancy, she admitted the rape to her mother.
The defendant took the stand, testified that he was a subcontractor for the Tri-County Flooring Co. of Brooklyn and had been in the flooring business for 25 years. He testified that on the day of the alleged incident he was working at 86th Street and Flatlands Avenue in Brooklyn several miles from his home, left at 7:00 a.m. and returned at 5:00 p.m. and never met Bernadine on that day. This 7:00 a.m. to 5:00 p.m. schedule was in effect for the four-day period between August 16 and August 20. He was paid by the job or rather by the square foot of flooring he installed. On August 19 he worked with his son, and with *827 Alan Peples, his uncle, neither of whom was called upon by defendant to support his alibi.
Defendant had not been previously arrested or convicted of a crime; was married, had two children and seven grandchildren. It was stipulated that his pastor, if called to the stand, would testify favorably as to defendant’s character.
Defendant’s wife testified that she was at home during the period from August 15 to August 20, 1971 with a 6-year-old grandchild. She did not recall seeing defendant on August 17 or August 19, 1971 at about 1:00 or 2:00 p.m. Under cross-examination she admitted leaving the house during the daytime.
The defendant’s able counsel argues that because the People failed to establish a prima facie case of rape, owing to lack of corroboration of the complainant’s account, “ not only must the rape charge be dismissed but no lesser sexual offense may be established.”
Despite the fact that the unfairness of the corroboration requirement in sex offenses has been modified by long-overdue action of the Legislature, the defendant is correct in his assertion.
The authority of People v. Doyle (31 A D 2d 490 [1969]) would compel dismissal — except for one factor — the charge of endangering welfare does not necessarily arise from, nor is it inextricably connected with, evidence of the commission of rape.
True, as of the date of the offense, the law was that where the charge of endangering health and morals was based on evidence of rape, the lesser charge had to be fully corroborated by the same testimony as would support the main charge.
As stated in People v. Radunovic (21 N Y 2d 186,189 [1967]): “ This well-defined legislative policy [corroboration of the testimony of the complainant in rape cases] has been extended by the courts to endangering the health and morals of a minor, assault with intent to commit rape and attempted rape where the charge is supported by evidence of a consummated rape (People v. Lo Verde, 7 N Y 2d 114; People v. English, 16 N Y 2d 719; and People v. Colon, 16 N Y 2d 988).”
But there is an aspect of the charge unconnected with rape.
At the first day of trial, the complainant testified that when she left the defendant’s apartment, “He grabbed me by the hand when I was leaving and told me I had better not tell nobody.”
At the preliminary hearing on January 4, 1972, the minutes of which were inspected by this court, the complainant likewise testified that after completion of the rape, the defendant zipped up his trousers. She was then asked:
*828 ‘ ‘ Tell me what happened from that point on, whether or not you had a conversation with the defendant or whether or not he said anything to you? ”
She answered, 11 he grabbed me by my arm and said * Better don’t tell anybody
“ The Court: He just said, ‘ Don’t tell anybody? ’ ”
“ The Witness: Yes.”
So — disregarding the uncorroborated testimony of rape — there is testimony that defendant warned complainant not to disclose the assault and stressed the warning by grabbing her arm.
Assuming that the court is convinced that the defendant warned the child against revealing what had happened — and that the People sustained their burden of proof beyond a reasonable doubt on this aspect of the case — the question is whether such verbal and physical warning warrants defendant’s conviction of endangering the welfare of the complainant.
The court feels that the People have proven that defendant did in fact warn the complainant not to disclose the happenings of August 19.
The case arose before the effective date of enactment of legislation amending section 130.15 of the Penal Law to eliminate the need in rape cases for testimony regarding penetration or, in most instances, the perpetrator’s identity (L. 1972, ch. 373). The same legislation also discarded the court-created rule extending corroboration to incidental crimes, where the charge is supported by evidence of a completed rape.
However, to silence the complainant is, in the court’s view, an endangerment of her welfare sufficient to sustain conviction of the defendant, independent of the uncorroborated rape.
If the testimony of the complainant is to be believed, Bernadine who might normally be expected to tell her parents about the ordinary happenings of her daily life, was bidden by the warning of defendant to nurse in silence, an extraordinary event. Of itself, this interdictment suffices to make out the crime of endangering her welfare. However, the evidence is as sufficient to connect her moodiness, silence and change of habits to the warning, as to the attack which preceded it, and thus to enable the court to find additional evidential support for the charge of endangerment.
Here we must distinguish the acts following the rape from those which preceded or accompanied the assault.
As recently as June 12, 1972, the Appellate Division, Second Department in People v. Goldberg (39 A D 2d 948) ruled that the defendant’s act in holding a 10-year-old child prisoner in *829 an apartment for several hours after he had raped her, was sufficient to support charges of unlawful imprisonment and endangering the welfare of a child. The court in a memorandum opinion specifically held that these crimes were completely independent of the earlier act of consummated rape and thus rejected the argument that these crimes were intertwined with the rape charges or were committed in the act of effecting the rape.
The cases cited by the Appellate Division are to the same effect. . Thus, in People v. Peters (26 N Y 2d 774, 775 [1970]) the complainant testified that after she was raped, defendant returned to the room where she had been ravished, and ‘ ‘ told her that, if she said anything about what had happended to her, he would ‘ get ’ her and kill her family, and then pushed her against the wall, punched her and told her to remember what she had been told.” In a memorandum opinion the Court of Appeals said that corroboration of complainant’s testimony was not required, since the assault of which defendant was convicted was found to be completely independent of the earlier act of consummated rape, charged by the complainant.
In People v. Moore (23 NY 2d 565 [1969]), defendant appealed from a conviction for robbery and larceny, committed by defendant against complainant while in the act of raping her.
The court, per Bergan, J. said (p. 567): “ Unlike the crime of assault, which to greater or lesser degree is a part of every forcible rape, there is no necessary interdependence between these two entirely distinct crimes (People v. Florio, 301 N. Y. 46) * * * Decisions beginning with People v. Lo Verde (7 N Y 2d 114) which have extended the need for corroboration for crimes other than rape itself will be seen on analysis to be either sexual offenses, as'in Lo Verde itself (endangering the health or morals of complainant), or assaults designed to help commit the rape (People v. English, 16 N Y 2d 719). ’ ’
And in People v. Lennon (22 N Y 2d 677 [1968]) defendant’s conviction of robbery in the first degree and assault in the second degree with intent to commit rape was sustained although complainant testified to a consummated rape. Her testimony as to the rape was held not to be a necéssary element to support defendant’s conviction for robbery. “ The requirement of corroboration, under section 2013 of the former Penal Law, extends only to those charges which are based solely upon evidence which, if believed, would render the accused guilty of the crime of rape. (See People v. Radunovic, 21 N Y 2d 186, 189-190; People v. English, 16 N Y 2d 719, 720; People v. Lo Verde, 7 NY 2d 114,116).” (supra, p. 678).
*830 Of course the court is mindful of the justification for enactment of article 130 of the Penal Law. As stated recently by the Court of Appeals in People v. Linzy (31 N Y 2d 99, 102) decided July 7,1972: “ The statutory requirement of corroboration in all rape cases and under the revised Penal Law in crimes prosecuted under article 130, as well as.the judicially created rule extending the corroboration requirement to crimes intrinsically related to rape or committed in aid of effecting rape (Penal Law, § 130.15; People v. Lo Verde, 7 N Y 2d 114; People v. English, 16 N Y 2d 719; see, also, People v. Moore, 23 N Y 2d 565, 567-568), finds plausible, if not redoubtable, justification in protecting against the danger of false accusations (People v. Yannucci, 258 App. Div. 171,173; Matter of Sam “ F ” and Bobby “ S ”, 68 Misc 2d 244; 7 Wigmore, Evidence [3d ed.], § 2061, p. 354; cf. People v. Radunovic, 21 N Y 2d 186,191, concurring opn., Breitel, J.).”
And, this court must agree with the reasoning of Judge Breitel’s concurring opinion in People v. Radunovic (supra) that complainant’s evidence in cases of sexual crime should be carefully scrutinized but should not be subjected to the irrational, unjust, anomalous but binding statutory requirement of corroboration. Even where the test has been attenuated by corrective legislation such as the recent amendment to section 130.15 of the Penal Law, the requirement of corroboration is unfair.
But until a common-sense standard is adopted, this court will not- strain to perpetuate the application of the corroboration test to cases in which an associated crime is spelled out independently of and not in aid of the rape.
The defendant stands convicted of endangering the complainant’s welfare.