# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia, Plaintiff Below,
Respondent**

**vs) No. 14-0454** (Mercer County 13-F-354)

**Brandon Taneyhill, Defendant Below,
Petitioner**

**FILED**

February 9, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Brandon Taneyhill, by counsel David Kelley, appeals the Circuit Court of Mercer County's sentencing order entered on March 18, 2014, following his conviction of one count each of burglary, petit larceny, conspiracy, and obtaining money by false pretenses. The State of West Virginia, by counsel Christopher Dodrill, filed a response. On appeal, petitioner argues that the circuit court erred in denying his motion to suppress evidence and sever the offenses. Petitioner further argues that the evidence against him was insufficient to support the jury's verdict.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On December 31, 2011, Britney Hunt's ("the victim") Xbox video game system ("Xbox") and two games were stolen from her residence. Officer Seth Gibson of the Bluefield Police Department advised the victim to contact several local pawn shops for her stolen property. Several days later, the victim located her property at the Gold-N-Pawn Shop in Bluefield, West Virginia. Officer Gibson retrieved the stolen property from the pawn shop, as well as a pawn receipt signed by the victim's first cousin Taitiana Bigelow. Following his visit to the pawn shop, Officer Gibson contacted Ms. Bigelow who agreed to give a statement. Ms. Bigelow acknowledged pawning the Xbox and two games; however, Ms. Bigelow advised Officer Gibson that she did not know the items were stolen as she pawned the items at petitioner's request. Having accompanied Ms. Bigelow to the police station, petitioner was read his *Miranda*[1] rights, signed a waiver of his rights, and gave an audio/video recorded statement. Petitioner stated that he purchased the Xbox from a friend, Brian Williams. Officer Gibson recorded this interview with a personal audio/video recorder and later memorialized the interview in the police report. After the video recording was uploaded to the police department's computer server, the recording was lost.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966).

1

Subsequently, Officer Gibson interviewed Mr. Williams who denied any knowledge about the Xbox. After interviewing Mr. Williams, Officer Gibson contacted petitioner and requested a second interview. Again, petitioner was read his *Miranda* rights, signed a waiver of his rights, and gave a second video recorded statement. In his second statement, petitioner stated that Mr. Williams wanted to purchase one-half ounce of marijuana. Petitioner advised Mr. Williams that he needed something to trade for the marijuana, such as a video gaming system. Petitioner then told Mr. Williams the locations of several residences that had video gaming systems. Petitioner stated that shortly after his conversation with Mr. Williams, he went to the Williams' residence and traded one-half ounce of marijuana for an Xbox and two games. Officer Gibson also recorded this interview with a personal audio/video recorder and memorialized the interview in the police report. After being uploaded to the police department's computer server, the recording of the second statement was also lost.

Thereafter, on October 16, 2013, a Mercer County Grand Jury indicted petitioner on one count each of burglary, petit larceny, conspiracy, delivery of a Schedule I controlled substance, and obtaining money by false pretenses. The circuit court denied petitioner's motion to suppress the recorded statements that he provided to Officer Gibson. Following a jury trial, petitioner was found guilty of burglary, petit larceny, conspiracy, and obtaining money by false pretenses. Petitioner was acquitted of delivery of a Schedule I controlled substance. The circuit court sentenced petitioner to consecutive terms of incarceration of one to fifteen years for one count of burglary pursuant to West Virginia Code § 61-3-11, one to five years for one count of conspiracy pursuant to West Virginia Code § 61-10-31, and one year for each count of petit larceny pursuant to West Virginia Code § 61-3-13(b) and obtaining money by false pretenses pursuant to West Virginia Code § 61-3-24. Thereafter, the circuit court suspended petitioner's sentences and placed him at the Anthony Correctional center for a period of six months to two years. It is from this order that petitioner appeals.

On appeal, petitioner raises three assignments of error. First, petitioner argues that the circuit court erred in denying his motion to suppress. Petitioner contends that the State violated his due process rights established in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963) and *State v. Youngblood*, 221 W.Va. 20, 650 S.E.2d 119 (2007), by failing to provide him with copies of his recorded statements, which petitioner contends were exculpatory or impeachment evidence.

In *State v. Lilly*, 194 W.Va. 595, 600, 461 S.E.2d 101, 106 (1995), this Court explained that the standard of review of a circuit court's ruling on a motion to suppress is a two-tier standard:

> we first review a circuit court's findings of fact when ruling on a motion to suppress evidence under the clearly erroneous standard. Second, we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action. Under the clearly erroneous standard, a circuit court's decision ordinarily will be affirmed unless it is unsupported by substantial evidence; based on an erroneous interpretation of

2

applicable law; or, in light of the entire record, this Court is left with a firm and definite conviction that a mistake has been made. *See State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886, 891 (1994). When we review the denial of a motion to suppress, we consider the evidence in the light most favorable to the prosecution. (Footnotes omitted).

This Court has established that "[a] claim of a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), presents mixed questions of law and fact. Consequently, the circuit court's factual findings should be reviewed under a clearly erroneous standard, and questions of law are subject to a *de novo* review." Syl. Pt. 7, *State v. Black*, 227 W.Va. 297, 708 S.E.2d 491 (2010). This Court further established that

> "'[t]here are three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.' Syllabus point 2, *State v. Youngblood*, 221 W.Va. 20, 650 S.E.2d 119 (2007)."

Syl. Pt. 8, *State v. Black*, 227 W.Va. 297, 708 S.E.2d 491 (2010).

Upon a review of this case, we conclude that the circuit court did not err in denying petitioner's motion to suppress. To begin, petitioner's argument that the audio/video recordings were exculpatory or impeachment evidence is purely speculative. This Court has stated that "any attempt to determine the level of exculpatory or impeachment value [if any] of the evidence would be mere speculation. It is impossible for this Court to ascertain whether the evidence would have been of an exculpatory or impeachment nature." *State v. Hawk*, 222 W.Va. 248, 251, 664 S.E.2d 133, 136 (2008). Further, the State did not willfully or inadvertently suppress any audio/video recordings of petitioner's interviews. The record establishes that the audio/video recordings that petitioner requested did not exist at trial. Officer Gibson's testimony was based upon the written narrative in his police report, which was provided to petitioner. Further, petitioner's counsel cross-examined Officer Gibson regarding his narrative. Because the evidence does not satisfy the first or second component of the *Brady/Youngblood* analysis, petitioner's argument fails.

Second, petitioner argues that the circuit court erred in denying his motion to sever the charge of delivery of a Schedule I controlled narcotic from the remaining counts. Petitioner argues that the charge of delivery of a Schedule I controlled substance was solely an attempt to characterize him as a "bad person" in the eyes of the jury. We disagree and find no abuse of discretion by the circuit court. "The decision to grant a motion for severance pursuant to W.Va.R.Crim.P. 14(a) is a matter within the sound discretion of the trial court." Syl. Pt. 3, in part, *State v. Hatfield*, 181 W.Va. 106, 380 S.E.2d 670 (1989). In this case, the evidence presented at trial related to all the counts in the indictment was substantially related. As noted above, petitioner

gave a statement that he offered to trade one-half ounce of marijuana in exchange for a video gaming system and that he named locations where the gaming system could be located. Upon a review of the record, the parties' arguments, and applicable law, we find that the circuit court did not abuse its discretion in denying the motion to sever.

Finally, petitioner argues that the evidence was insufficient to support his convictions. Petitioner's argument is based on the premise that the State failed to prove essential elements of the crimes of burglary, petit larceny, and conspiracy. Specifically, petitioner argues that the testimony revealed that there were no signs of forced entry into the victim's house or other evidence placing him inside the victim's house. We have held as follows:

> "'The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.' Syl. Pt. 1, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995)." Syl. Pt. 1, *State v. Juntilla,* 227 W.Va. 492, 711 S.E.2d 562 (2011).

Syl. Pt. 8, *State v. Stone*, 229 W.Va. 271, 728 S.E.2d 155 (2012).

> "'A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. [] Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.' Syl. Pt. 3, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995)." Syl. Pt. 2, *State v. Juntilla,* 227 W.Va. 492, 711 S.E.2d 562 (2011).

Syl. Pt. 9, *State v. Stone,* 229 W.Va. 271, 728 S.E.2d 155 (2012).

To begin, we find no merit in petitioner's argument that the State failed to prove that there was a forced entry into the victim's residence because the State was not required to prove such an element. We have held that

> '[a]n accessory before the fact is a person who being absent at the time and place of the crime, procures, counsels, commands, incites, assists or abets another person to commit the crime, and absence at the time and place of the crime is an

essential element of the status of an accessory before the fact.' Syllabus Point 2, *State ex rel. Brown v. Thompson*, 149 W.Va. 649, 142 S.E.2d 711, cert. denied, 382 U.S. 940, 15 L.Ed.2d 350, 86 S.Ct. 392 (1965).[2]

Syl. Pt. 6, *State v. Fortner*, 182 W.Va. 345, 387 S.E.2d 812 (1990). West Virginia Code § 61-3-11(a) clearly provides that a person can be convicted of burglary "[i]f any person shall, in the nighttime, break and enter, *or enter without breaking* . . . ." (Emphasis added.) Further, as it relates to the charges of burglary and petit larceny, the State did not have to prove that petitioner actually burglarized the victim's residence or stole the video game system. "[A] person may be convicted of a crime so long as the evidence demonstrates that he acted as an accessory before the fact, as a principal in the second degree, or as a principal in the first degree in the commission of such offense." *Id.* at 356, 387 S.E.2d at 822-23. The evidence introduced at trial supports the jury's determination that petitioner was an accessory before the fact because he incited Mr. Williams to steal a video gaming system in exchange for one-half ounce of marijuana. Officer Gibson testified that petitioner told Mr. Williams that he would exchange one-half ounce of marijuana for a video game system and provided Mr. Williams with locations where he could obtain the desired video game system. Similarly, the State was not required to prove an actual agreement between petitioner and Mr. Williams in order for the jury to convict petitioner of conspiracy. "The agreement may be inferred from the words and actions of the conspirators, or other circumstantial evidence . . . ." *State v. Less*, 170 W.Va. 259, 265, 294 S.E. 2d 62, 67 (1981). Again, based on petitioner's statements to Officer Gibson, the jury was free to infer that an agreement existed between petitioner and Mr. Williams to steal a video gaming system in exchange for one-half ounce of marijuana. "When in a criminal case the question of guilt depends upon the weight of evidence, or inferences and deductions from facts proved, the jury and not the court, is almost exclusively and uncontrollably the judge." Syl. Pt. 3, *State v. Bailey*, 151 W.Va. 796, 155 S.E.2d 850 (1967). As such, the evidence was sufficient to support petitioner's convictions.

For the foregoing reasons, the circuit court's sentencing order is affirmed.

Affirmed.

**ISSUED**: February 9, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[2]A review of the record indicates that the circuit court instructed the jury on the elements of an accessory before the fact.